**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHELLEY M. KINCAID,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:16-cv-736

Barrett, J.

Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Shelly Kincaid filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents four claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the record as a whole.

**I.  Summary of Administrative Record**

In March 2011, prior to the application for benefits that led to the adverse decision at issue in this appeal, Plaintiff filed an application for supplemental security income ("SSI"), alleging disability beginning January 1, 2011, based on neuropathic pain and a positive HIV diagnosis. (Tr. 94). After her 2011 claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an administrative law judge ("ALJ").  She appeared at that hearing without counsel.  On February 13, 2013, ALJ Curt Marceille determined that, despite severe impairments of degenerative lumbar disc disease, depressive disorder, borderline intellectual functioning, and HIV, Plaintiff could continue to perform the demands of a limited range of light work, and was

1

not under a disability. (Tr. 92-105). ALJ Marcielle's decision referenced an earlier adverse decision by ALJ Kelly,[1] which denied Plaintiff's claim for disability benefits between October 2006 and August 2009. (Tr. 99). There is no record of a judicial appeal of either the 2009 or 2013 adverse disability decisions.

Plaintiff filed a third application for SSI, alleging disability beginning January 1, 2013, subsequently amended through counsel to February 14, 2013, to correspond with the day after her last adverse decision. Plaintiff's most recent claim was also denied initially and upon reconsideration. A hearing was held on April 1, 2015 in Cincinnati, Ohio. Appearing with counsel,[2] Plaintiff gave testimony, as did an impartial vocational expert. (Tr. 44-88). When asked what had changed since the last adverse decision, Plaintiff testified that she experienced greater swelling in her legs and more severe pain. (Tr. 75). On May 22, 2015, ALJ Deanna Sokolski denied Plaintiff's claim in a written decision. (Tr. 14-24). The Appeals Council denied Plaintiff's request for review, leaving ALJ Sokolski's decision as the final decision of the Commissioner.

Plaintiff was 47 years old at the time of the ALJ's last decision. She has less than a high school education, having left school after the eleventh grade to have a baby and to take care of her sister. (Tr. 18). She has past work as a cleaner and janitor, but has not worked since 2005. ALJ Sokolski determined that the depression found by ALJ Marcielle was no longer severe, but that Plaintiff continued to suffer from severe impairments that included "degenerative disc disease of the back, HIV, and borderline intellectual functioning." (Tr. 16). None of those impairments, either alone or in

---

[1]The transcript of the hearing before ALJ Kelly appears in the record. Plaintiff was represented by Attorney Stephen Mazzei at that hearing. (Tr. 29-43).
[2]Plaintiff was represented by E. Jeffrey Casper at her 2015 hearing, but is represented by James Roy Williams in this Court.

combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (Tr. 17). Instead, the ALJ determined that Plaintiff continued to retain the residual functional capacity ("RFC") to perform work at a sedentary level, with the following non-exertional restrictions:

> [S]he cannot climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl. She cannot use foot controls with her bilateral lower extremities. She must avoid all exposure to workplace hazards. She can perform simple, routine, repetitive tasks on a sustained basis.

(Tr. 19). Although Plaintiff could not perform any of her past work, the ALJ found she still could perform jobs that exist in significant numbers in the national economy, including the representative occupations of hand packer, folder stacker, and assembler. (Tr. 23). Therefore, the ALJ concluded that Plaintiff is not under a disability. The Appeals Council denied review, leading Plaintiff to file this judicial appeal.

In her Statement of Errors, Plaintiff argues that the ALJ erred by: (1) failing to base the exertional level of sedentary work on the opinion of a physician; (2) improperly weighing the medical opinion evidence; (3) failing to include additional limitations concerning concentration, persistence, or pace;[3] and (4) improperly assessing Plaintiff's credibility. I find no reversible error.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or

---

[3]Plaintiff breaks this single error into two separate claims in her Statement of Errors, (Doc, 5 at 8), but the undersigned has combined the two closely related issues into one claim for the convenience of the Court.

mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

### B.  Specific Errors

### 1.  Restricting Plaintiff to Sedentary Work

Plaintiff first argues that the ALJ erred when she restricted Plaintiff to a reduced range of "sedentary" work, because none of the physicians who offered RFC opinions stated that she could perform work at that exertional level.  Instead, agency physicians suggested she could perform work at the less restrictive "light" level, whereas her treating physician suggested she was incapable of even sedentary work.  Plaintiff posits this as an error of law, suggesting that an ALJ may not "split the difference" between medical opinions.

I find no error, because the record reflects that the ALJ properly considered the record as a whole.  The ALJ alone is responsible for determining a Plaintiff's RFC.  *See* 20 C.F.R. § 404.1546(d).   The regulatory burden on the ALJ accounts for the fact that in some cases, no physician has completed a functional assessment, while in other

cases, an RFC assessment may exist that is not supported by substantial evidence and is appropriately rejected by the ALJ. There is no regulatory requirement that an ALJ adopt every facet of a particular medical opinion in formulating an RFC, so long as the record as a whole supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review. A disagreement with how the ALJ decided to weigh differing medical opinions "is clearly not a basis for …setting aside the ALJ's factual findings." *Mullins v. Sec'y of HHS*, 836 F.2d 980, 984 (6th Cir. 1987).

Here, the ALJ adequately explained how she arrived at a "sedentary" RFC, and – as further discussed below - her analysis finds substantial support in the record as a whole. The RFC in the 2015 decision is more restrictive than that determined in the last adverse decision, in that Plaintiff's exertional level was reduced from light to sedentary, and an additional restriction prohibits her from climbing ladders, ropes or scaffolds, with only occasional climbing of ramps and stairs. (C*ompare* RFC determined on 2/13/13 at Tr. 97). In fashioning this more restrictive RFC, the ALJ gave only "partial weight" to the non-examining State Agency consulting physicians who assessed Plaintiff's RFC at the "light" exertional level.

The opinions of the consulting physicians referred to a similar RFC set forth in an earlier decision, under the rule set forth in *Drummond v. Com'r,* 125 F.3d 837 (6th Cir. 1997) (holding that a subsequent ALJ is bound by the RFC findings of a previous ALJ, in the absence of new and material evidence that would provide a basis for changing the prior determination). In April 2013, consulting physician Leo Hughes, M.D. adopted the RFC stated in the 2/13/13 decision under *Drummond.* (Tr. 119). On reconsideration on August 9, 2013, consulting physician Robert Wysokinski, M.D. affirmed the adoption

of the 2/13/2013 RFC to light work, but added a climbing restriction that was adopted by the ALJ in this case.[4]  (Tr. 133-134).  Rather than adopting the 2013 "light work" RFC in accord with both consultants' opinions that no significant change in RFC findings had occurred under *Drummond*, ALJ Sokolski determined she was not bound by those 2013 RFC findings because of new and material evidence establishing significant decline since the last adverse decision.  (Tr. 14).  She explained her decision to restrict Plaintiff to the sedentary level rather than to accept the consulting physicians' assessment of light work, citing "the claimant's lumbar MRI results and complaints of fatigue." (Tr. 22). The ALJ also fully explained why she rejected Plaintiff's treating physician's opinion that Plaintiff could perform less than full-time work at the sedentary level, and therefore was disabled.

Again, contrary to Plaintiff's view, there is no legal requirement that an ALJ be able to point to a specific medical opinion to support the determination of a plaintiff's exertional capacity.  In fact, to require an RFC to correspond to a medical source opinion would be "an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."  *Rudd v. Com'r of Soc. Sec.*, 531 Fed. Appx. 719, 738 (6th Cir. 2013); *see also* SSR 86-5p.  In choosing to restrict Plaintiff to sedentary work (with an additional restriction on climbing as noted), rather than the light work RFC determined by agency consultants, the ALJ properly considered the totality of the record.  That record included not only the referenced medical opinions, but also Plaintiff's complete medical records and reports of worsening symptoms relating to Plaintiff's back impairment and fatigue.  The ALJ explained that, in restricting Plaintiff to

---

[4]Dr. Wysokinski specifically considered but rejected Plaintiff's treating physician's July 30, 2013 RFC opinions as unsupported.

a "sedentary" level, she was relying on all records and reported symptoms, some of which post-dated the consulting physicians' review of the record.  (*See* Tr. 22).

### 2.  Weighing the Medical Opinion Evidence

In a closely related second claim, Plaintiff argues that the ALJ improperly weighed the medical opinion evidence in this case.  As stated, two non-examining physicians determined in April and August of 2013 that Plaintiff retained the physical RFC to perform "light" work, essentially finding no significant changes had occurred since the last adverse decision.  The ALJ did not fully accept their opinions, but gave greater weight to their assessments than to Plaintiff's treating primary care physician, Susan Keeshin, M.D., to whose opinions she gave "little" weight.

Dr. Keeshin completed an RFC questionnaire concerning Plaintiff's lumbar spine impairment on July 30, 2013.  On that form, she opined that Plaintiff could walk only for one city block without rest or severe pain, could stand or walk for "less than 2 hours" in a day, and could sit for a total of no more than 4 hours in a day.  (Tr. 392).  The same form states that Plaintiff requires walking breaks of 10 minutes at a time, as well as a job that permits shifting positions at will, with unscheduled breaks every 2 hours for 10-15 minutes.  (*Id.*)    In addition, Dr. Keeshin opines that Plaintiff should keep her legs elevated up to knee level for 50% of the time during an 8-hour working day, and must use a cane when standing or walking.  (*Id.*)  She states that Plaintiff can lift less than 10 pounds only rarely, and can "never" list 10 pounds or more.  (*Id.*)  Dr. Keeshin assesses Plaintiff with numerous postural restrictions, stating she can never twist, stoop, crouch/squat, climb ladders, or climb stairs.  (Tr. 393).  She also assesses Plaintiff with significant limitations with reaching, handling or fingering, stating she can use her hands and fingers for not more than 50% of any workday, and use her arms for reaching not

8

more than 25% of the time. (*Id.*) She believes Plaintiff is likely to be absent from work more than four days per month. (*Id.*) Dr. Keeshin's RFC limitations, if accepted, would preclude all work.[5]

Plaintiff argues vigorously that the ALJ erred by failing to give controlling weight to Dr. Keeshin's opinions as her treating physician. Additionally, she argues that the ALJ erred in evaluating the opinions of agency physicians, by giving them less scrutiny than given to the treating physician in violation of *Gayheart*, *v. Com'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), and by failing to acknowledge that they did not have access to records that post-dated their review, in violation of *Blakley v. Com'r of Social Security*, 581 F.3d 399 (6th Cir. 2009).

I begin with the ALJ's assessment of Dr. Keeshin's opinions. The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. The Commissioner is required to provide "good reasons" if the Commissioner does not give controlling weight to the opinion of a treating physician. *Id.*

The treating physician rule generally requires the ALJ to give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."

---

[5]Dr. Keeshin's RFC opinions also were rejected as unsupported by the ALJ in the February 13, 2013 decision, which was not appealed. However, the agency's prior rejection of the same opinions does not eliminate the ALJ's duty to provide "good reasons" for the rejection of a treating physician's opinions in this new application determination.

*See Blakley*, 581 F.3d at 406. However, in *Blakley* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances," the opinions of non-examining consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Id.*, 581 F.3d at 409 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). While an ALJ may not reject a treating physician opinion solely based on the conflicting opinions of non-examining consultants, *see Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, no reversible error occurs when an ALJ determines that a treating physician opinion is not entitled to controlling weight because it is not well-supported, is internally inconsistent, and/or is inconsistent with the record as a whole.

In addition to the referenced RFC opinions, Dr. Keeshin submitted a letter dated March 12, 2013 that appears to support Plaintiff's application for Medicaid health insurance. In that letter, Dr. Keeshin states that her patient has been suffering from chronic back pain since November 2011, and notes the results of x-rays from 2011 and an MRI from October 2012 that "confirm[] that she has severe neuropathy, sciatica, due to a moderate disc bulge which is severely compressing the nerve root to her legs," along with degeneration of another disc in her lower back. Dr. Keeshin states that Plaintiff's pain is "moderately controlled with NSAIDs and Vicodin," but indicates that Plaintiff would benefit from approval of her Medicaid application since she "then could be referred to Physical Therapy and could be considered for facet injection with steroids. If not treated she may need back surgery in the future." (Tr. 341).

On September 20, 2013, Dr. Keeshin submitted a second letter that was nearly identical to the March letter, but adds an opinion that Plaintiff "is unable to work as she can't lift, carry, push or pull over 5 lbs, she can't stand for long periods of time >1 hour." (Tr. 421). The September letter omits the March reference to steroid treatment but

10

repeats the recommendation for physical therapy, stating:  "She needs a trial of physical therapy (PT) and if [her back pain] can't be improved with PT she will need to be referred to neurosurgery.  She is unable to pay for PT as she does not have insurance." (Tr.421).

The ALJ gave "little weight" to the opinions expressed in Dr. Keeshin's two letters, and also expressly gave little weight rather than controlling weight to Dr. Keeshin's RFC opinions.  (Tr. 22).  With respect to Dr. Keeshin's opinion that Plaintiff "is unable to work," (Tr. 421), the ALJ appropriately explained that opinion was "reserved for the Commissioner."  (Tr.22).  "Opinions on some issues…are not medical opinions…but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §404.1527(d); *see also* SSR 96-5p, 1996 WL 374183, at *1 ("[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance").

In further explaining why she declined to give controlling weight and instead gave only "little weight" to Dr. Keeshin's RFC opinions, the ALJ wrote:

> [T]here is little evidence within Dr. Keeshin's treatment notes to support her opinion.  For example, Dr. Keeshin's treatment records in September 2013 show no edema, no muscle tenderness or joint deformities, a normal cervical and thoracic exam, and that the claimant exhibits decreased range of motion and tenderness in her lumbar back, but no bony tenderness, no swelling, no edema, no deformity, no laceration, no pain, no spasms, and normal pulse. (Exhibit C6F, page 4).

> Dr. Keeshin appears to be treating the claimant conservatively with Ibuprofin and Vicodin.  Dr. Keeshin opined that the claimant would greatly benefit from physical therapy in a letter dated March 2013, but the claimant has failed to follow through even though she has had insurance since 2014 (Testimony and Exhibit C2F). Treatment records on November 25, 2014, show that the claimant reported she is feeling better overall and she was told to follow up in six months.  Treatment notes on April 16,

> 2014, show that the claimant's complaints of back pain and sciatica are stable since the last visit (Exhibit 9F, page 19).
>
> In sum, the overall record supports that the claimant is doing well and that she is stable on medications. She is seen for routine follow-up every five to six months. She testified that she has not been hospitalized and no surgery has been recommended. The claimant has failed to follow-up with recommended physical therapy. There does not appear to be a significant change in the formulation of the residual functional capacity.

(Tr. 22).

Plaintiff contends that the ALJ erred "in not noting the positive objective medial findings on the 2012 MRI …and the neuropathy from this." (Doc. 5 at 6). She also contends that the ALJ failed to properly consider her use of a cane, which she alleges was prescribed based on her neuropathy.

Contrary to Plaintiff's argument, the record reflects that the ALJ explicitly referenced the MRI evidence, which also had been considered prior to the February 13, 2013 decision that is administratively res judicata on the issue of whether Plaintiff could perform "light" work up through that date. ALJ Sokolski cited the MRI results and complaints of fatigue (primarily attributed to her HIV status) as the reason for further reducing her from light to sedentary work. (Tr. 22). However, neither the MRI nor other treatment records provide any support for the type of extreme limitations that Dr. Keeshin offered based on Plaintiff's alleged back impairment, for all of the reasons stated by the ALJ.

Some of the extreme limitations offered by Dr. Keeshin were not even supported by Plaintiff's own testimony, whose testimony the ALJ also discounted. For example, although Dr. Keeshin opined Plaintiff could walk no further than a block without rest or severe pain, Plaintiff testified that she had walked to the hearing (a distance of nearly a mile), and would walk to the store. As the ALJ pointed out:

12

> Treatment records in April 2014 and December 2014 reveal the claimant's complaints of back pain and sciatica are stable. (Exhibit C9F, pages 9, 19). The claimant denies weakness in her limbs. Contrary to complaints of swollen legs, upon examination, the claimant has no edema (Exhibit C9F, pages 7, 21).

(Tr. 21, citing checkup on 4/16/14 with Dr. Keeshin, and checkup 11/25/14 with Dr. Phillips, *see also* Tr. 426 reports "feeling better overall" on 11/25/14; Tr. 441, noting Plaintiff denies "leg edema," denies "weakness in limbs," and denies arthralgias or myalgias; Tr. 442 "[n]o …edema. No muscle tenderness or joint deformities").

Plaintiff testified that she had used a cane nearly constantly for "three to four years" prior to the April 2015 hearing date. (Tr. 63). The record reflects that Plaintiff testified similarly in the 2009 and 2013 hearings that she used a cane. (*See* Tr. 41, transcript of 2009 hearing). However, in both the 2009 and 2013 decisions, the ALJs discounted the alleged cane use and did not include it in Plaintiff's RFC. (*See* Tr. 96).

At her most recent hearing, Plaintiff testified that Dr. Keeshin had "suggested" a cane. Although Plaintiff implies that the ALJ failed to acknowledge her cane use, the ALJ did discuss Plaintiff's testimony on this issue, (Tr. 20), prior to explaining that she did not find Plaintiff's testimony to be "entirely credible." (Tr. 21). As with her rejection of other functional limitations offered by Dr. Keeshin on the July 30, 2013 RFC questionnaire, the ALJ did not include cane use in Plaintiff's RFC.

The undersigned finds no error in the failure to include cane use in the RFC. First, Plaintiff fails to point to any treatment or clinical record in which her alleged cane use is discussed, or a cane prescribed. Notwithstanding her separate RFC opinions, Dr. Keeshin's clinical records appear to contain no such prescription. Second, the element of cane use was discounted in part based on the ALJ's critical adverse credibility finding, which also is supported by substantial evidence, as discussed below.

Third, even if the ALJ had included this limitation, it does not appear that such cane use would have required a finding of disability. Although the vocational expert testified that the three jobs that the ALJ referenced would be eliminated if Plaintiff were not able to engage in no more than occasional bilateral handling, the VE testified that she could still perform the sedentary job of surveillance system monitor, with 17,500 positions available nationally. (Tr. 81-82; *accord* Tr. 102 at n.4, 2013 ALJ decision noting that even "assuming the claimant were limited to sedentary work, a sit/stand option, and cane use, the vocational expert indicated that jobs would exist in significant numbers.").

The last criticism Plaintiff levels at the ALJ's rejection of Dr. Keeshin's RFC opinions concerns the ALJ's reference to clinical records of her back condition being "stable." Plaintiff asserts that stability is not equivalent to improvement. However, the ALJ never equated the two. Instead, she appropriately noted the lack of any credible evidence in the record (other than Plaintiff's own discredited testimony) of a worsening of Plaintiff's back condition *to the point of being disabling* after the prior 2013 decision, and ample evidence to the contrary, including 2014 treatment records. Plaintiff points to no newer imaging studies beyond the 2012 MRI, no ER visits or increase in frequency of treatment, or to any other clinical or other medical evidence that would support either Dr. Keeshin's RFC opinions or a finding of disability. In sum, the ALJ rejected Dr. Keeshin's unsupported opinions for "good reasons," and appropriately explained her analysis and conclusions with reference to substantial evidence in the record as a whole. Because the ALJ properly rejected the unsupported RFC opinions, she was not required to include Dr. Keeshin's limitations in Plaintiff's RFC.

The undersigned also finds no error in the ALJ's analysis of the consulting opinions in this case. Contrary to Plaintiff's argument, the ALJ's analysis reflects neither

14

*Gayheart* nor *Blakley* error.   Unlike in *Gayheart*, where an ALJ rejected a treating physician's opinion on grounds that it conflicted with the non-examining consulting opinions, in this case the ALJ did no such thing.  Instead, she appropriately discounted the treating physician's opinions because the extreme limitations she endorsed were completely unsupported by the record, and inconsistent with that physician's own treatment records.   Moreover, in contrast to *Blakley*, where an ALJ gave the most weight to the opinions of consulting physicians who had not reviewed critical records that post-dated those opinions, and failed to acknowledge that fact, in this case the ALJ did exactly the opposite.  In other words, the ALJ looked carefully at the consulting opinions but gave them only "partial" weight, formulating the RFC at a more restricted level based on those later records, which she specifically discussed.

### 3.  The ALJ's Accommodation of Moderate Limitations in Concentration, Persistence, or Pace

As a third claim, Plaintiff argues that the ALJ did not adequately account for her moderate limitations in concentration persistence, or pace.  Plaintiff relies chiefly on *Ealy v. Com' of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010), a case in which the Sixth Circuit reversed on grounds that an ALJ failed to properly accommodate moderate limitations in concentration, persistence, or pace.  However, in *Ealy*, the ALJ used a "streamlined" hypothetical that omitted without discussion a consulting physician's very specific hourly restrictions on pace.  Numerous post-*Ealy* decisions have affirmed in cases in which the ALJ has addressed a moderate impairment in concentration, persistence, and pace by including a limitation to "simple repetitive tasks," clearly rejecting any bright line rule that such limitations are always inadequate.  *See, e.g., Hicks v. Com'r*, Civil Case No. 1:13-cv-425-SJD, 2014 WL 4748356 at *6 (R&R adopted

Sept. 23, 2014); *Suesz v. Com'r*, 2014 WL 4162555 at *6 (R&R adopted Aug. 20, 2014). *Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio Feb. 1, 2013) (collecting cases).

The facts presented in this case are clearly distinguishable from the facts presented in *Ealy*. Here, Vicki Warren, Ph.D., specifically opined that despite moderate difficulties in maintaining concentration, persistence, or pace, Plaintiff retained the capacity to carry out "simple, routine, repetitive tasks on a sustained basis," the exact limitations that the ALJ incorporated into the RFC, after discussion of Dr. Warren's opinion. (Tr. 19, 131, 134). No medical source RFC opinion or other evidence required any more restrictive limitation.

### 4. The ALJ's Credibility Assessment

Plaintiff's final claim is that the ALJ improperly assessed her credibility. Considering that the ALJ further limited Plaintiff to sedentary work with a number of non-exertional limitations instead of adopting the RFC findings from 2013, the ALJ clearly credited some of Plaintiff's complaints. However, based in part on her negative assessment of Plaintiff's credibility, the ALJ did not agree that Plaintiff's pain and physical limitations precluded all work. (Tr. 21-22). Although *Drummond* does not apply to credibility determinations, it is worth noting that the ALJs in the 2009 and 2013 decisions both made similar adverse credibility findings. (*See generally* Tr. 95-100, referencing ALJ Kelly's similar adverse credibility findings). In the most recent 2015 decision, ALJ Sokolski cited multiple reasons for her adverse finding, including Plaintiff's minimal and conservative treatment, her improvement with treatment, her failure to attend physical therapy, her daily activities, her own inconsistent statements, and the medical opinions. (Tr. 21-22).

16

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387.

Plaintiff argues that the ALJ made several errors in her analysis. First, she asserts that the ALJ should not have discounted her complaints regarding the severity of her symptoms based upon her lack of surgical treatment for her back. The ALJ cited Plaintiff's relatively minimal and conservative treatment as one factor for her adverse finding. The record confirms that Plaintiff generally saw her primary care doctor for routine checkups only once every 5-6 months. The record also confirms the lack of hospitalization or ER visits for any of her conditions, and that Plaintiff's conditions were managed with medications alone. Regulations permit consideration of the level of treatment in the context of making a credibility determination. *See* SSR 96-7p ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints…").

Plaintiff complains that Dr. Keeshin's letter stated that if physical therapy were not successful, she would refer Plaintiff to a specialist, a neurosurgeon, for further evaluation and/or treatment. (Tr. 421). Plaintiff argues that the only reason she did not

attend PT was due to "insurance problems" in 2013.[6]  However, the ALJ's May 22, 2015 decision properly considered that Plaintiff had been covered by insurance since 2014, but still had made no effort to attend physical therapy as prescribed.  (Tr. 21-22, 58-59, 421).  An ALJ may consider non-compliance with treatment as a credibility factor.  *See Williams v. Com'r*, 2014 WL 1406433, at *13 (N.D. Ohio Apr. 10, 2014).  Moreover, notwithstanding Dr. Keeshin's ambiguous reference to referral to a neurosurgeon, Plaintiff admitted that no physician has ever suggested surgical treatment for her back condition.  (Tr. 67).

Plaintiff points to the fact that she takes narcotic medication as supportive of her claims.  However, the ALJ discussed Plaintiff's testimony that she could not work due to pain, and the fact that Plaintiff took medication that included narcotics.  (Tr. 20, 59, 62-64, 75).  Although Plaintiff testified to side effects from her medication before the ALJ, she reported no such side effects to her physicians.  (Tr. 21-22, 75, 426, 440, 442).  She also testified that she had not sought anti-nausea medication, which the ALJ found suggested that she was not in distress from claimed side effects.  (Tr. 21-22, 75).  Even Dr. Keeshin reported that Plaintiff's pain was "moderately controlled" with medication. In her November 2014 clinical notes, Dr. Keeshin recorded Plaintiff's own statement that she was feeling better overall with no new complaints.  (Tr. 17, 21-22, 426).

The ALJ considered Plaintiff's testimony about her limitations in daily activities, including her statements that she could sit no more than three to four minutes at a time, or stand for only four minutes while leading on her cane, and that she elevated her legs daily due to swelling.  (Tr. 20, 62, 68-73).  She also noted Plaintiff's report that she had

---

[6]Plaintiff also asserts that the ALJ did not comply with SSR 82-59, which requires an assessment of whether PT will restore an ability to work.  However, SSR 82-59 applies only to individuals who would otherwise be found to be under a disability, and is not applicable here.

neuropathy in her hands that caused her to drop things.  (Tr. 20, 74).  However, in discounting those allegations, the ALJ pointed out that contrary to Plaintiff's testimony, she denied weakness in her limbs to her physicians, and non-focal motor examination showed no cranial nerve abnormalities. (Tr. 17, 441-442).  Also contrary to her testimony of extreme swelling in her legs (one of two reasons Plaintiff testified had "changed" since the last adverse disability decision), there was no evidence of edema on examination, and Plaintiff denied swelling to her physicians.  (Tr. 21-22, 428, 442). She walked close to a mile to the hearing, and did not report any difficulty doing so. She also walked to the store; the ALJ found this testimony to be inconsistent with her claim that she could not stand longer than four minutes.  (Tr. 21-22)  Contrary to her testimony on neuropathy in her hands, there were no electromyopgraphy (EMG) or other nerve conduction studies in the record.  There was also no evidence that Plaintiff had ever sought out testing or that any such studies been recommended by any physician. (Tr. 21-22, 74).  Thus, objective medical evidence including clinical examination records severely undermined Plaintiff's testimony that her limitations were disabling.

Plaintiff's daily activity level (including the referenced walking) also was appropriately considered.  Plaintiff could prepare simple meals, read for 2 hours per day, used the computer for research, had worked in the past, lived independently, made her own decisions and managed her own finances and household, and used public transportation.  (Tr. 18, 52-75).  Plaintiff highlights portions of her testimony in an attempt to bolster her own credibility, including testimony that she has help with dishes and bathing, limits computer use to about an hour per day, has help at the grocery store, and elevates her legs 2-3 times per day for 15 minutes to an hour.  Pointing to her

19

own discredited testimony does not undermine the substantial evidence that supports the adverse finding, nor does it provide grounds for reversal of the adverse credibility finding.  An ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole.  *See* 20 C.F.R. §415.929(c).

Last, Plaintiff cites Dr. Keeshin's RFC statements to bolster her credibility, insofar as Dr. Keeshin checked the "yes" box to a query asking whether her impairments are reasonably consistent with the medical findings.  (Tr. 391).  However, for the reasons previously discussed, the ALJ properly discounted Dr. Keeshin's unsupported opinions.

Plaintiff has been found to have a degenerative back condition.  In 2013, that condition limited her to light work, but by 2015 at the age of 47, she was found to be limited to a reduced range of sedentary work.  While Plaintiff remains free to file a new claim based upon a worsening of her symptoms and/or advancing age, substantial evidence supports the ALJ's most recent determination that she was not disabled as of May 22, 2015.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SHELLEY M. KINCAID,                                    Case No. 1:16-cv-725

               Plaintiff,                        Barrett, J.
                                                       Bowman, M.J.

     v.


COMMISSIONER OF SOCIAL SECURITY,

               Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21